[No. 28244.    Department One.    April 28, 1941.]

LEON R. EDWARDS *et al., Appellants,* v. TEAMSTERS LOCAL UNION No. 313 *et al., Respondents.*[1]

[1]Reported in 113 P. (2d) 28.

*Charles T. Peterson,* for appellants.

*L. B. Sulgrove,* for respondents.

MAIN, J.—Leon R. Edwards and Lonnie L. Edwards, his wife, owned and operated a fuel yard in the city of Tacoma, and brought this action to restrain the defendants from picketing or causing their place of business to be picketed, and for damages. The trial resulted in a judgment dismissing the action, from which the plaintiffs appeal.

Leon R. Edwards will be referred to as though he were the only appellant. His manner of doing business was this: He owned a number of trucks. He would lease these to an employee for a certain rental. The employee would purchase wood from the appellant at wholesale and peddle it throughout the city, getting such prices as he could therefor. Orders would come to the appellant direct for fuel, and these would be delivered by the operators of the trucks, and for such delivery they would get a certain price per load. With each employee there was a written contract, some of which contained the provision that either party could terminate the contract on ten days' notice; others said, thirty days.

In the appellant's employ were three men who belonged to the Teamsters Local Union No. 313. Sometime early in the year 1939, the union became dissatisfied, principally, with the manner in which the appellant was paying for the delivery of fuel where the orders came to him direct. The reason for this was that they had no means of checking as to whether he was paying his employees the union wage scale. The union had placed the appellant's business upon what was called the "We Don't Patronize List." Negotiations between the parties continued until February 27,

1939, when the then attorney of the appellant drafted a letter, which was as follows:

"Tacoma, Washington
February 27, 1939

"Mr. C. M. Dahlager
"Teamsters & Chauffeurs Union, Local No. 313
"621 Pacific Avenue
"Tacoma, Washington
"Dear Sir:

"You have complained because this company has been renting certain of its trucks to Mr. Roberson, Mr. Sower and Mr. Loucks, and has also been selling them fuel at wholesale prices, which they, in turn, resell to their own customers at their own price.

"As a result of our several conferences it is understood that we will, on or before April 1, 1939, abandon our practice of renting our equipment to persons who, in turn, purchase fuel from us for resale.

"It is understood and agreed, however, that we may, without objection, sell any or all of our fuel to any person or persons who take delivery thereof at our place of business so long as such delivery is not made in our trucks.

"It is understood that we will pay for fuel truck drivers at the rate of $6.25 per day or 90¢ per hour for an extra driver.

"It is further understood that our name is to be removed from your 'unfair' list on Wednesday, March 1, 1939.

"Yours very truly,
"EDWARDS FUEL COMPANY
"By L. R. Edwards."

It will be observed that this letter provides for four things: (a) That, as a result of the several conferences, it was understood that the appellant, on or before April 1, 1939, would abandon his practice "of renting our equipment to persons who, in turn, purchase fuel from us for resale"; (b) that it was understood that he might sell any and all fuel products to any person or persons who might take delivery at his

place of business so long as such delivery was not made in his trucks; (c) that it was understood that the appellant would pay for the fuel truck drivers "at the rate of $6.25 per day or 90¢ per hour for an extra driver," (these sums were the union wage scale); and (d) that it was further understood that the appellant's name would be removed from the union's unfair list on Wednesday, March 1, 1939.

Immediately after this, the union did remove the appellant's name from the unfair list. The appellant, however, did not at any time change his method of doing business in any regard. He continued to operate just as he had in the past. Sometime later, the union having discovered this, further negotiations were entered into, but were never consummated. The result was that the appellant was placed upon what the union called the "We Don't Patronize List."

May 23, 1940, the union men working for the appellant were called out. On the same day, the union began picketing the appellant's place of business. Sometimes there were two of these pickets in the vicinity of the place of business, wearing what is called "sandwich signs," on the front and back of which appeared: "Leon R. Edwards Fuel Company unfair to organized labor." The picketing was entirely peaceful. The pickets did not trespass upon the property of the appellant, nor did they block ingress or egress therefrom, and were at all times courteous. In addition to this, there was no evidence of past violence and no threat of future violence. It is true that one of the appellant's witnesses testified that he had been threatened by a representative of the union; but this was only an isolated instance. The witness was apparently not friendly to the union, and, when all the evidence is considered, we are of the opinion that the union at no time threatened or authorized any threats of violence

to be made.  Soon after this, the present action was begun, for the purposes above stated.

The appellant first contends that the respondents had no right to picket his place of business in order to require him to cancel and terminate existing contracts with persons renting his trucks and purchasing fuel from him at wholesale.  Upon the trial, he first testified that he had made no arrangements with the union by which he was to abandon his former method of doing business.  When confronted with the letter which he had signed, addressed to a representative of the union, the position was then taken that that agreement was against public policy and unenforcible.

In the case of *Marvel Baking Co. v. Teamsters' Union Local No. 524,* 5 Wn. (2d) 346, 105 P. (2d) 46, it was held that a contract, wherein the employer agreed that he would employ only members of a union and not sell goods for resale to persons not in good standing with the union, was a valid and binding contract.  While that case is not exactly like this, the underlying principle is the same.

Aside from this and disregarding the letter for the time being, there existed a labor dispute, because the appellant was employing some union men and was not paying the union wage scale.  Under the recent holdings of the United States supreme court, the union had a right to peacefully picket the appellant's place of business.  *Thornhill v. Alabama,* 310 U. S. 88, 84 L. Ed. 1093, 60 S. Ct. 736; *Carlson v. California,* 310 U. S. 106, 84 L. Ed. 1104, 60 S. Ct. 746; *Milk Wagon Drivers Union etc. v. Meadowmoor Dairies, Inc.,* 312 U. S. 287, 61 S. Ct. 552; *American Federation of Labor v. Swing,* 312 U. S. 321, 61 S. Ct. 568.

The case of *Safeway Stores v. Retail Clerks' Union,* 184 Wash. 322, 51 P. (2d) 372, and the cases which

have followed it, are clearly distinguishable from the present case, and they have no application here.

The answer to the contention that the union was endeavoring to require the appellant to breach his contracts with his employees is that he was not required to do so, but only to exercise a right under them which, in accordance with his letter, he would be required to do. The contracts, as above appears, contained a provision that either of the parties might terminate them within the number of days specified. The appellant, of course, had a right to exercise that option. The union did not begin picketing until the appellant had ample time to have canceled the contracts in accordance with the provisions therein.

In this connection, there is another contention that, inasmuch as there was no termination date fixed in the contract, the appellant had a right to terminate it. We see no force in this objection. The agreement evidenced by the letter provided that the appellant should abandon a certain practice, and this he did not do.

There is the further contention that the picketing was for the purpose of compelling the appellant to sign a closed shop contract with the building trades council covering some houses which he was then erecting on a tract of land which he owned. We find no substantial evidence to support this contention. From the record it is definitely clear, as already stated, that the union primarily objected to the method by which the appellant was conducting his business, and especially the manner in which he was paying for the delivery of orders which came to him, by the load rather than by the union wage scale.

The appellant makes two other contentions. One is that the union was seeking to require him to employ his truck drivers through the teamsters union;

and the other, that he should send the money due them to the union hall and let the union pay the workmen direct. These two contentions are not now material and will not become material until the parties agree, if they do agree, upon wages, hours, and working conditions; and we, therefore, pass them without discussion or decision.

Something is said with reference to a secondary boycott against a sawmill from which the appellant was getting much of his wood fuel. That was not an issue in the case, and no such boycott was ever announced by the union.

The judgment will be affirmed.

ROBINSON, C. J., BLAKE, and DRIVER, JJ., concur.

STEINERT, J., concurs in the result.

