SMITH, ETC. *v.* GENERAL MOTORS CORPORATION ET AL.

[No. 18,774. Filed June 20, 1957. Rehearing denied July 19, 1958. Transfer denied March 6, 1958.]

312

*George Rose,* of Indianapolis, for appellant V. R. Smith.

*Owen J. Neighbours, William E. Roberts, Clyde L. Peterson* and *Duck & Neighbours,* all of Indianapolis, for appellant John G. McKay.

*Henry M. Hogan, Hubert Hickam, Frederic D. Anderson, George J. Zazas, Barnes, Hickam, Pantzer & Boyd,* all of Indianapolis, for appellee General Motors Corporation.

*Lynnville G. Miles* and *Stark, Miles, Pace, Agnew & Cummings,* all of Indianapolis, for appellees Raymond H. Berndt, John Bartee and International Union, United Automobile, Aircraft and Agricultural Workers of America.

BOWEN, J.—The appellants, individually and on behalf of a class designated as other employees of the General Motors Corporation in the State of Indiana, and not members of any union, brought an action in the court below against General Motors Corporation, which shall be hereinafter referred to in this opinion as General Motors, and the United Automobile, Aircraft and Agricultural Implement Workers of America, which shall be hereinafter referred to in this opinion as UAW, seeking a restraining order and a temporary injunction to prevent the enforcement of the union shop provision of the collective bargaining agreement between General Motors and UAW and certain named officials of the UAW who are the appellees herein. The court rendered special findings of fact as follows:

(a) That no unlawful acts have been threatened, or committed, or will be committed unless restrained, by the defendants.

(b)    That no substantial or irreparable injury to the plaintiff's property will follow.

(c)    That as to each item of relief sought, greater injury would be inflicted upon defendants by the granting of relief than would be inflicted upon plaintiff by the denial of relief.

(d)    That plaintiff has no remedy at law or in equity since no unlawful acts have been threatened or committed.

(e)    That the public officer charged with the duty to protect plaintiff's property is able and willing to furnish adequate protection.

(f)    That plaintiff has failed to make any effort to settle the dispute by the use of the provisions for review and decision in the collective bargaining agreement or by the use of the machinery provided in the National Labor Relations Act.

The court also entered its conclusions of law that the law is with the appellees and that the appellants are not entitled to a temporary injunction. From a judgment dissolving the restraining order and denying the appellants' petition for temporary injunction this appeal is taken.

The evidence for the most part consisted of a stipulation of facts which in substance sets forth that the appellee General Motors is engaged in manufacturing at various plants within the State of Indiana, and at each of those plants is engaged in interstate commerce; that the UAW is a labor organization which has been certified by the National Labor Relations Board as exclusive representative of all the production and maintenance employees for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment, at each of the various General Motors plants within the State of Indiana; and that such UAW has continued, and is continuing to be such exclusive representative, representing approximately 37,000 of the General

Motors employees in Indiana. The dates of such certifications in the various plants were in the early 1940's. It was further stipulated that the appellant Smith, and those on whose behalf the action was brought, were employees in one of the appropriate bargaining units covered by the certifications for which UAW is the collective bargaining representative. Attached to the Stipulation of Facts as Exhibit 1 was the Collective Bargaining Agreement between General Motors and UAW which contained the sections of such agreement which were quoted in a certain letter sent by General Motors on July 29, 1955, to its employees. Such provisions of the agreement are as follows:

"(4)    An employe who is a member of the Union at the time this Agreement becomes effective shall continue membership in the Union for the duration of this Agreement to the extent of paying an initiation fee and the membership dues uniformly required as a condition of acquiring or retaining membership in the Union.

"(4a)    An employe who is not a member of the Union at the time this Agreement becomes effective shall become a member of the Union within 60 days after the thirtieth (30th) day following the effective date of this Agreement or within 60 days after the thirtieth (30) day following employment, whichever is later, and shall remain a member of the Union, to the extent of paying an initiation fee and the membership dues uniformly required as a condition of acquiring or retaining membership in the Union, whenever employed under, and for the duration of, this Agreement.

"(4b)    Anything herein to the contrary notwithstanding, an employe shall not be required to become a member of, or continue membership in, the Union, as a condition of employment, if employed in any state which prohibits, or otherwise makes unlawful, membership in a labor organization as a condition of employment.

"(4c)    The Union shall accept into membership each employee covered by this Agreement who

tenders to the union the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership in the Union."

Such letter from General Motors to its employees and plaintiff below, further set forth:

"General Motors Corporation and the International Union, UAW-CIO have entered into a new National Agreement which became effective on May 29, 1955. Under this Agreement all covered employes must become and remain members of the Union as a condition of employment. The Union shop provisions of this new National Agreement are as follows: . . . .

"It is our understanding from information available to us that you are not now a member of the UAW-CIO. Even though you may not have been requested previously to become a member of the Union or may have possibly resigned from Union membership under the provisions of the May 29, 1950 National Agreement between General Motors Corporation and the UAW-CIO, it will now be necessary for you, within the time limits specified in the above-quoted union shop provisions of the new 1955 National Agreement, and in any event not later than August 26, 1955, to become and remain a member of the Union as a condition of continued employment.

"If you have any questions concerning any of the foregoing information, consult the Personnel Department.

"For your convenience, a UAW-CIO Membership Application form and an Authorization for Check-Off of Dues form are enclosed. When completed, these may be mailed or delivered either to the local Union or to the Personnel Department of the Company.

Very truly yours,
/s/ T. J. Dwyer
T. J. Dwyer
Supervisor, Labor Relations."

The appellants' petition for temporary and permanent injunction which was denied by the lower court, in effect sought to enjoin the appellees from requiring

the appellants to become and remain members of the union as a condition of their employment to the extent and in the manner provided for by such contract.

Two separate appearances and two separate briefs have been filed on behalf of the appellants in this class action, one of which said briefs was filed on behalf of appellant V. R. Smith, and the other on behalf of appellant employee, John G. McKay.

Counsel for both appellants assert that the union shop agreement in question is made unlawful by the provisions of the Indiana Anti-Injunction Act, Chapter 12 of the Acts of the General Assembly of the State of Indiana, 1933, §40-501, et seq., Burns' 1952 Replacement. Counsel for appellant Smith contends that such contract is in violation of appellants' rights under Sections 1 and 23 of Article 1 of the Bill of Rights of the Constitution of the State of Indiana, while counsel for appellant McKay make no constitutional argument.

The appellees assert that the controversy in the instant case is governed by the laws of the United States and that the courts of Indiana cannot interfere, and that the matters involved herein are subject to the jurisdiction of the National Labor Relations Act as amended, 29 U. S. C., §151, et seq. In answer to this contention appellants cite and rely upon §14(b) of the National Labor Relations Act, 29 U. S. C., §164(b) which provides:

"Nothing in this Act shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

The principal basis of appellants' contentions is that the Indiana Anti-Injunction Act passed in 1933,

§§40-501 to 40-514, Burns' 1952 Replacement, ■ forbids the execution or application of agreements requiring membership in a labor organization as a condition of employment in the state of Indiana. We are inclined to agree that since the union shop agreement in question provides for a type of union security agreement permitted by the Labor Management Act requiring only the payment of dues and initiation fees, 29 U. S. C., 158 (A) (3), and since the provisions of said §14 (b) of the National Labor Relations Act, *supra*, recognizes the right of a state to pass a so-called "right-to-work" law, this court has jurisdiction and authority to pass upon the assignment of errors and contentions of the appellants.

We are called upon to determine in this appeal, whether the provisions of the Anti-Injunction Act passed in 1933, *supra*, forbid the employer from making a contract with the Union which requires the employees to join the Union "to the extent of paying an initiation fee and the membership dues required as a condition of acquiring or retaining membership in the Union," as a condition of employment, and further, whether the appellants were entitled to injunctive relief to prevent the enforcement of the union shop agreement in question between General Motors and the UAW.

In common parlance, the appellants urge this court to adopt a judicial declaration that the provisions of such Anti-Injunction Act, *supra*, include a prohibition against the application or execution of agreements requiring membership in a labor organization to the extent of paying initiation fees and dues as a condition of employment in the state, or that such act is a so-called "right-to-work" law which they claim was in effect, and that it prohibited the union shop agreement

which was entered into between appellee General Motors and the UAW.

The statutes which were in effect at the time of the execution of the union shop agreement in question, and at the time of the trial of this cause below, which the appellants assert constituted a so-called "right-to-work" law and prohibited the application or execution of agreements requiring membership in a labor organization as a condition of employment read as follows:

"Whereas, under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership associations, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives for the purpose of collective bargaining or other mutual aid or protection; therefore, the following definition of, and limitations upon, the jurisdiction and authority of the courts of the state of Indiana are hereby enacted. (Acts 1933, ch. 12, §2, p. 28, §40-502, Burns' 1952 Replacement.)

. . . . . .

"Any undertaking or promise, such as is described in this section, or any other undertaking or promise in conflict with the public policy declared in section two (§40-502) of this act, is hereby declared to be contrary to the public policy of the state of Indiana, shall not be enforceable in any court of the state of Indiana and shall not afford any basis for the granting of legal or equitable relief by any such court, including specifically the

following: Every undertaking or promise here-after made, whether written or oral, express or implied, constituting or contained in any contract or agreement of hiring or employment between any individual, firm, company, association, or corporation, and any employee or prospective employee of the same, whereby

(a) Either party to such contract or agreement undertakes or promises not to join, become, or remain a member of any labor organization or of any employer organization; or

(b) Either party to such contract or agreement undertakes or promises that he will withdraw from an employment relation in the event that he joins, becomes, or remains a member of any labor organization or of any employer organization. (Acts 1933, ch. 12, §3, p. 28, §40-503, Burns' 1952 Replacement.)"

The issues raised in this appeal require a determination of the question whether the foregoing statutes make the union shop contract between General Motors and UAW illegal, contrary to public policy and a violation of the appellants' constitutional rights.

The facts of the record before us present a situation where the UAW as the union had been certified by the National Labor Relations Board as the exclusive representative of the employees of General Motors, including the appellants, for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, and other conditions of employment. No claim is made here that there was any coercion practiced on the part of the employer, or any other persons, or any unfair labor practice involved in the majority designation of the union as a collective bargaining agent of such employees. The contract in the instant case was mutually acceptable to the union and to the employer, General Motors, and both the union and General Motors have filed briefs in support of the legality of the agreement which is the subject

matter of this cause of action. The appellants rely mainly on two cases in this state together with other cases from other jurisdictions by analogy and reference to the question involved. It cannot be questioned that the union shop agreement, which is the subject matter of this action, was a type of union security agreement which is clearly permitted under the Labor Management Act, in that the requirement as to union membership was only to the extent of requiring the payment of initiation fees and membership dues.

The two decisions of this state which are relied upon by the appellant are the Roth case, *Roth* v. *Local Union No. 1460 of Retail Clerks Union et al.* (1940), 216 Ind. 363, 24 N. E. 2d 280; *Local No. 1460 of Retail Clerks Union et al.* v. *Roth* (1941), 218 Ind. 275, 31 N. E. 2d 986; and *Bartenders, etc. Union* v. *Clark Restaurants* (1952), 122 Ind. App. 165, 102 N. E. 2d 220.

Both the facts and the principle of law announced in the Roth case are wholly dissimilar and inapplicable to the factual situation in the case at bar. In the Roth case the plaintiff was the owner and operator of a small grocery store and sought an injunction against the picketing of his store by the union, and the court found that while the picketing was peaceful, it constituted illegal coercion of the employer in that it sought to compel him against his desire to sign a closed shop contract, and the court held that such picketing was wrongful and oppressive. The Clark case was an action by an employer to enjoin the picketing of his business by a labor union, and as stated in the opinion, "The core of this action was the charge of appellee that the appellants were attempting to coerce it to require its employees to join appellant union; that to accomplish this unlawful purpose appellants had resorted to picketing its business." The court held that such picketing contravened the public policy expressed

in the anti-injunction statute and that it should be enjoined.

The case of *Blue Boar Cafeteria Co.* v. *Hotel & Restaurant, etc.* (1953 Ky.), 254 S. W. 2d 335, relied upon by appellant, involved picketing to coerce the employer to compel its employees to unionize, and it was held to be illegal.

After a thorough study of the record and the briefs in this case, and the decisions of the courts of this country, it must be observed that this Anti-Injunction Act has been in effect in this state for twenty-three years and similar statutes have been in force in more than half of the rest of the states in the nation, and the appellants have not cited, nor has any decision been brought to our notice where any court has interpreted the intention of the legislative body in similar statutes in accordance with the meaning ascribed to it by the appellants.

Among the principal cases from other jurisdictions relied upon by the appellants are the cases of *Building Service Employees International Union, Local 262 et al.* v. *W. L. Gazzam* (1950), 339 U. S. 532, 70 Sup. Ct. 784, and *Ostroff* v. *Laundry and Dye Works Drivers' Local No. 566* (1950), 37 Wash. 2d 595, 225 P. 2d 419. It must be noted, however, in connection with these cases that in neither of them was the union seeking to enforce a union shop agreement voluntarily entered into by the employer. But, from the language found in such opinions, such as the statement at page 533 in the Gazzam case by Justice Minton, "It is the public policy of the State of Washington that employers shall not coerce their employees' choice of representatives for purposes of collective bargaining," it would seem that the public policy which prohibits employer interference with organizational matters makes that prohibition with reference to the individual unor-

ganized worker in the process of his becoming, or not becoming, organized. Once organization had occurred and a bargaining representative was selected, the parties were not by this statute, or any statute then in force, or by any federal law, limited in making their own contracts. There was alleged coercion present in the Gazzam, Clark, and Roth cases, and in the Blue Boar case, *supra.*

A complete confutation of appellants' contentions is to be found in the decision of *Yeager* v. *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 313* (1951), 39 Wash. 2d 807, 239 P. 2d 318. This court, which was the same court that decided the Gazzam and Ostroff cases, *supra,* relied upon by the appellants, considered and rejected the arguments which appellants seek to make in the instant case, in the following language:

> "Appellant asserts that respondents' object was to compel the discharge of appellant's nonunion employee, so that a union member could be employed in his place. It is argued that this is an unlawful object, in view of the policy declaration in the labor disputes act (Rem. Rev. Stat. (Sup.), §7612-2 [P.P.C. §695-3]), as applied in several decisions of this court. It is further contended that the object is particularly obnoxious in this case because respondents are maintaining a closed union.
>
> "In substance, the by-laws in question constituted a closed shop agreement, effective while appellant was a member of the union. It was an agreement entered into voluntarily by appellant at a time when he employed only union members. Contracts of this kind are commonplace and not unlawful under the laws of this state. The only statutory provision which has any possible bearing on this is the declaration of policy contained in the labor disputes act of 1933, referred to above. This policy declaration has never been held to prohibit closed shop agreements entered into voluntarily and exerting no compulsion upon the then em-

ployees of the contrating employer. On the contrary, a contract of this kind was recognized and given effect by this court in *Marvel Baking Co.* v. *Teamsters' Union, etc.,* 5 Wn. 2d 346, 105 P. 2d 46. See also, *Edwards* v. *Teamsters Local Union No. 313,* 8 Wn. 2d 492, 113 P. 2d 28.

"*Gazzam* v. *Building Service Employees Int. Union, Local 262,* 29 Wn. 2d 488, 188 P. 2d 97, 34 Wn. 2d 38, 207 P. 2d 699, 339 U. S. 532, and *Ostroff* v. *Laundry & Dye Works Drivers' Local No. 566,* 37 Wn. 2d 595, 225 P. 2d 419, cited by appellant, are not in point. In neither of these cases was the union seeking to enforce a closed shop agreement voluntarily entered into by the employer. *Blanchard* v. *Golden Age Brewing Co.,* 188 Wash. 396, 63 P. 2d 397, is likewise inapplicable. There the employer and the picketing union were seeking to coerce the employees to discontinue their affiliation with one union and join another."

The appellants in the instant case have petitioned the court for an injunction restraining the appellees from requiring the appellants to join the UAW union under threat of a discharge. Such petition for injunction seeks to avoid a discharge of such appellant employees and the ultimate effect of such injunction would be to prevent the discharge of such appellant employees by injunction. The law seems to be well settled in this state that specific performance will not lie to enjoin the violation of a contract for personal services. As the Supreme Court stated in *Schwier et al.* v. *Zitike et al.* (1894), 136 Ind. 210, 213, 36 N. E. 30:

"It is now so well settled that a person can not be enjoined from violating a contract for personal services, when such contract contains no negative stipulations, that it seems not to be an open question. (Citing authorities.)

"On the other hand, we think it is equally well settled that the employer can not be enjoined from a violation of such a contract, by discharging the employe."

In the case of *Faultless Castor Corp.* v. *Unit. Elec. Workers* (1949), 119 Ind. App. 330, 86 N. E. 2d 703, which was a case involving a collective bargaining agreement between the employer and the union, four employees were discharged, allegedly in violation of the collective bargaining agreement. They and the union brought an action for an injunction compelling the employer to reemploy the four and to prevent it thereafter from discharging or disciplining them except in accordance with the provisions of the collective bargaining agreement. The Appellate Court reversed the judgment of the trial court, which had granted a temporary injunction, and stated as follows:

> "It is well settled in Indiana that an employee who has been wrongfully discharged and refused employment contrary to his contract with his employer, may recover from his employer in an action at law. (Citing authorities.)

> "The contract under consideration does not require the appellees to perform any unique or extraordinary service nor does it contain any negative stipulations with reference to the relationship between the appellees and the company. Under such a contract an injunction will not issue to prevent the discharge of an employee, *Schwier et al.* v. *Zitike et al.* (1894), 136 Ind. 210, 36 N. E. 30, nor will the contract be specifically enforced. *Thiebaud, Trustee et al.* v. *The Union Furniture Co.* (1896), 143 Ind. 340, 42 N. E. 741; *Dukes* v. *Bash* (1902), 29 Ind. App. 103, 64 N. E. 47; *Hall* v. *Delphi-Deer Creek Twp. School Corp.* (1934), 98 Ind. App. 409, 189 N. E. 527.

> "Although the relationship between these parties grew out of a collective bargaining agreement, the case nevertheless resolves itself into one where four individuals seek an injunction which would restore them to their positions. Such relief will not be granted at the behest of individuals for whose benefit a collective bargaining agreement has been made. *Beatty* v. *Chicago, B. & Q. R. Co.* (1935), 49 Wyo. 22, 52 P. 2d 404. See also *Cham-*

bers v. *Davis* (1922), 128 Miss. 613, 91 So. 346; and *Schwartz* v. *Driscoll, Judge* (1922), 217 Mich. 384, 186 N. W. 522.

"*Beatty* v. *Chicago, B. & Q. R. Co., supra,* was much like the present case on its facts, and many of the cases here relied upon were there analyzed and considered. There, as here, the action was essentially one by an individual member to compel reinstatement to a position from which he had allegedly been wrongfully removed, and for the enforcement of seniority rights. It was there held that the employee could not compel reinstatement. "The appellees are not without a remedy. They have an adequate remedy at law, and so under the statute, to say nothing of general equitable principles, the injunction should not have issued."

Where there is an employment relationship of a fixed duration, without negative stipulations, and where such contract does not require the performance of any unique or extraordinary service, the mandatory continuation of such respective relationship cannot be the basis for specific performance and equitable intervention.

Appellant Smith contends that the union shop agreement is in violation of appellants' rights under Sections 1 and 23 of Article 1 of the Bill of Rights of the Constitution of the State of Indiana. The appellant cites *Weisenberger* v. *State* (1931), 202 Ind. 424, 175 N. E. 238, which case upholds "The constitutional personal liberty clause or the right to pursue proper vocations is regarded as an unalienable right and privilege, not to be restricted except for good cause."

In discussing the decision in the Weisenberger case the appellant, in his own brief at page 112, states as follows:

"This decision declared that the right to work at an occupation or trade, *where we can find a job,* is part of the 'liberty' protected by the Constitution. It is no *guarantee of a job at any place,* be-

cause jobs must be created by the employer. The employer is the only one who creates jobs, and if the worker can persuade him that he can perform the job, neither employer nor the union, nor the government can interfere with his 'liberty,' to work at that job, by compelling him to join or not join a union." (Our emphasis.)

The appellant further asserts that consequently the union shop agreement is an interference with, and violation of, the employees' liberty. The statement by the appellant that the protected liberty is not the guarantee of a job at a particular place points up the fallacy of appellant's argument. Certainly, if an employer desired to make a contract by which he would hire as employees only the graduates of a technical school, it would be a valid contract and clearly no one questions the right of an employer to choose to employ whom he may see fit. He may employ only his neighbors or his family as he may desire. To hold otherwise would definitely infringe upon the right of freedom of contract.

Appellant's constitutional argument proceeds upon the assumption that a worker may force his employment upon a particular employer, which is the situation where the employer has made a voluntary contract determining whom he will or will not employ. To force an employer to take any particular worker on the ground that he has the right to work at that particular job certainly smacks of totalitarianism. Those holding to such views are sometimes motivated by a consideration of the economic theory of the so-called "lack of mobility of labor" in the labor market, or where they are concerned with situations in which there is a violation of the anti-trust laws.

The agreement which was entered into in the instant case was done so in complete compliance with the fed-

eral and state laws, and the provisions of the then existing laws, including the Indiana Anti-Injunction Act, do not in reason or authority make such contract illegal.

It should be further noted, also, that during the time this case was under consideration by this court, the General Assembly of the State of Indiana passed House Bill No. 197 which became law without the signature of the Governor. Chapter 19, Acts of the 1957 General Assembly. Such law was the so-called "Right-to-Work" law and it does ban union security contracts executed subsequent to the time that the act becomes effective. Under rules of statutory construction and interpretation the courts may look to all legislation in *pari materia,* to contemporaneous legislative history, and to all acts passed either before or after the statute in question, whether repealed or unrepealed, in order to determine the legislative intent. *Parvin* v. *Wimberg et al.* (1892), 130 Ind. 561, 30 N. E. 790; *State Board of Tax Commission et al.* v. *Holliday et al.* (1898), 150 Ind. 216, 49 N. E. 14; *State* v. *Sopher* (1901), 157 Ind. 360, 369, 61 N. E. 785; *Thorn* v. *Silver* (1910), 174 Ind. 504, 516, 89 N. E. 943, 92 N. E. 161; *Wayne Township* v. *Brown* (1933), 205 Ind. 437, 457, 186 N. E. 841; *Morin* v. *Holliday* (1906), 39 Ind. App. 201, 210, 77 N. E. 861.

Since Section 1 of Chapter 19, Acts of 1957 General Assembly, declares the public policy for the state of Indiana to be that union security contracts are not valid, such language would be meaningless and unnecessary if Section 2 of the Anti-Injunction Act already made such contracts invalid, and Section 3 of such act contains a saving clause declaring illegal only contracts entered into or extended after the effective date of the act. This leaves the presumption that contracts entered into or extended before the

effective date of such act are valid. If possible, we must harmonize this act with other acts. Such provisions in the saving clauses in the 1957 act would be absurd and meaningless had the legislative intention existed in the Anti-Injunction Act, as contended for by the appellants. *Magenheimer* v. *State ex rel. Dalton* (1950), 120 Ind. App. 128, 90 N. E. 2d 813; *Dreves* v. *Oslo School Twp. of Elkhart* (1940), 217 Ind. 388, 28 N. E. 2d 252, 128 A. L. R. 1405.

For the reasons given, therefore, the lower court did not err in denying appellants' petition for a temporary injunction, and it did not err in its special finding of facts and conclusions of law, and the decision and judgment of the lower court is sustained by sufficient evidence and is not contrary to law.

The judgment is therefore affirmed. Pfaff, J., concurs in result.

Royse, J., and Cooper, J., not participating.

Transfer denied. Bobbitt, acting C. J., in which Achor, J., dissents. Emmert, C. J., not participating.

NOTE.—Reported in 143 N. E. 2d 441.