FILED
COURT OF APPEALS
DIVISION II

2013 MAR -5 AM 9:23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42033-3-II |
| Respondent, | |
| v. | |
| FLOYD ARGUS GREENLEE, III, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — Floyd Argus Greenlee, III appeals his convictions of second and third degree theft, arguing that the trial court violated his right to both a timely trial under CrR 3.3 and a fair trial, and that he received ineffective assistance of counsel when his attorney failed to move to suppress the evidence seized after his arrest. Finding no prejudicial error, we affirm.

## FACTS

On the evening of November 21, 2010, a man entered a Longview Walmart wearing dark shoes and pants, a dark jacket with gray stripes down the arms, and a white hat. He took a shopping cart to the store's electronics section, spoke on a phone, and put a television selling for $698 in the cart. When he pushed the cart toward the store's front door, Walmart greeter Irmgard Potter asked if he had a receipt. The man responded by grabbing the television and

running out the door. Potter watched as the man with the television ran toward an older model light-colored car.

On the afternoon of November 22, 2010, a man who resembled the man described above entered the same Walmart through another entrance and pushed a shopping cart over to the computer section. The man was wearing a dark beanie, dark pants, a dark jacket, and white shoes. He spoke on a phone and put a computer selling for $898 in the cart. He approached the front of the store, grabbed the computer from the cart, and ran past Potter. As he fled the store, an older light-colored car drove up. The man left in the car with the computer. Potter believed the same vehicle was involved in both thefts.

On both days, the man's movements in and out of the store were videotaped from multiple security cameras. Matthew Shirley, the store's asset protection coordinator, contacted the police and showed Officer Calvin Ripp the video of the second theft and gave him still photographs from the video. Dispatch had already given Ripp a description of the vehicle involved as well as its license plate number.

Later that day, another officer stopped the suspect vehicle and arrested the driver on a separate matter. Officer Ripp told the driver, Kevin Atkinson, that he was investigating a theft at Walmart involving Atkinson's vehicle. Atkinson gave Ripp an address where he said Greenlee had been "hanging out." 2 Report of Proceedings (RP) at 173.

Officer Ripp showed the Walmart still photographs to Longview Police Captain Robert Huhta, who identified the man shown as Greenlee. Ripp and two other officers then went to the address Atkinson had provided. Ripp knocked on the front door and asked if Greenlee or Cory Freeman was inside; the woman who answered said that Freeman was upstairs and allowed the

officers entry. The officers found Greenlee and another man in an upstairs bedroom. Ripp verified Greenlee's identity and arrested him.

After receiving his *Miranda*[1] warnings, Greenlee denied knowing anything about the thefts. Officer Ripp observed that at the time of his arrest, Greenlee was wearing white shoes similar to those in the November 22 video and a jacket with stripes that looked like the jacket in the November 21 video. Greenlee also was wearing a ski mask rolled up into a beanie. When Ripp showed Greenlee a still photograph from the November 22 video and pointed out that his shoes resembled those the man was wearing, Greenlee replied that the shoes were "the same exact kind of shoes as mine, but they aren't my shoes because I wasn't there." 2 RP at 182. Ripp seized the beanie, shoes, and jacket as evidence.

The State charged Greenlee with second and third degree theft, and he was arraigned on the out-of-custody docket on December 22, 2010. The court set a trial date of March 14, 2011, which was 82 days from arraignment. On March 3, the State moved to continue the trial date because Shirley, Walmart's asset protection coordinator, would be on vacation from March 5 through 17. The State asserted that Shirley was a material witness who provided security footage of the thefts and identified Greenlee as the person shown on that footage.

A hearing on the continuance motion was held on March 10, 2011. Greenlee opposed the continuance and argued that Shirley was merely a foundational witness who could be replaced by another Walmart employee. The trial court disagreed and concluded that Shirley appeared to be a material witness. The court added that Greenlee had made no showing of specific prejudice as

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

a result of the continuance. Defense counsel then agreed to the State's proposed March 28 trial date.

On March 24, the State moved for a second continuance because the prosecuting attorney in charge of Greenlee's case was in another trial. The court granted the continuance over Greenlee's objection and reset the trial for April 4, 2011.

At Greenlee's trial, Potter, Shirley, and Officer Ripp testified to the facts as set out above. The trial court admitted Greenlee's booking sheet and photograph during Ripp's direct examination. During cross-examination, Ripp admitted that he acted on Atkinson's information regarding Greenlee's whereabouts even though Atkinson initially gave a false name. Cross-examination also established the connection between the car, Atkinson, and Greenlee.

At trial, Department of Corrections Probation Officer Megan Hlavac testified that she had known Greenlee for several years and that he was the man in the video footage and the still photographs. Captain Huhta also testified that he had known Greenlee for several years, and he identified Greenlee as the man in the photographs as well.

The jury found Greenlee guilty of theft as charged and the trial court imposed consecutive standard range sentences. He now appeals his convictions.

DISCUSSION

TIMELY TRIAL

Initially, Greenlee argues that the trial court violated his timely trial rights under CrR 3.3 when it granted the State's motion for a continuance to secure Shirley's presence.[2]

---

[2] Greenlee uses the terminology "speedy trial," but his arguments are based on the timely trial provisions of CrR 3.3 rather than the constitutional speedy trial principles of the Sixth Amendment.

4

We review the application of the timely trial rules de novo. *State v. Bobenhouse*, 143 Wn. App. 315, 322, 177 P.3d 209 (2008), *aff'd on other grounds*, 166 Wn.2d 881, 214 P.3d 907 (2009). Objections to a trial date on timely trial grounds must be made within 10 days after notice of the trial date is given. CrR 3.3(d)(3). The objecting party also must promptly note the matter for hearing. CrR 3.3(d)(3). Any party who fails, for any reason, to file and note a motion to set the trial date within the time limits of CrR 3.3 loses the right to object. CrR 3.3(d)(3); *Bobenhouse*, 143 Wn. App. at 322; *see also State v. Chavez-Romero*, 170 Wn. App. 568, 587-88, 285 P.3d 195 (2012) (noting that with these requirements, CrR 3.3 sets out a clear standard).

Here, after the trial court granted the initial continuance to March 28, Greenlee did not object to the new trial date by filing a motion to set the trial within the time limits of CrR 3.3 or by noting the matter for such hearing. Greenlee now argues that the trial court could have timely set the new trial date for March 18, 21, or 22, but he never requested one of these trial dates with a corresponding motion or request for a hearing.[3] Moreover, although he initially opposed a continuance, his counsel agreed to the new March 28 trial date.

We review a trial court's decision to grant a continuance for abuse of discretion. *See State v. Nguyen*, 131 Wn. App. 815, 819, 129 P.3d 821 (2006) (decision to grant continuance under CrR 3.3 rests in sound discretion of trial court). The unavailability of a material State witness is a valid ground for continuing a criminal trial where there is a valid reason for the unavailability, where the witness will become available within a reasonable time, and where there is no substantial prejudice to the defendant's ability to present a defense. CrR 3.3(f); *State*

---

[3] Nor did Greenlee argue that a continuance would take the trial outside the timely trial limits. *See State v. Greenwood*, 120 Wn.2d 585, 606, 845 P.2d 971 (1993) (timely objections under CrR 3.3 are required so that, if possible, trial court can fix the error and satisfy the rule).

*v. Day*, 51 Wn. App. 544, 549, 754 P.2d 1021, *review denied*, 111 Wn.2d 1016 (1988). Based on the information before the court when it made its ruling, Shirley was a material witness who would be available after his vacation within a few days of the original trial date, and Greenlee made no showing of prejudice to his ability to present a defense from the short continuance granted to accommodate Shirley's testimony. The trial court did not abuse its discretion in this ruling.[4]

ADMISSION OF EVIDENCE

Greenlee argues next that the trial court denied him a fair trial by admitting irrelevant and unfairly prejudicial evidence. *See* ER 402 (irrelevant evidence is inadmissible); ER 403 (relevant evidence may be excluded if its probative value is outweighed by its prejudicial effect). Greenlee groups the allegedly unfair evidence into three categories: hearsay evidence that the driver of the getaway car was associated with Greenlee, Officer Ripp's opinion testimony regarding Greenlee's guilt, and Greenlee's booking sheet and photograph.

A.    HEARSAY EVIDENCE

Greenlee argues that the trial court erroneously admitted hearsay evidence when it allowed Officer Ripp to testify that (1) someone said they saw the suspect vehicle, (2) someone said they obtained the license plate from the suspect vehicle, (3) another police officer said he had stopped that vehicle and arrested Atkinson, (4) Atkinson denied any involvement in the Walmart thefts, (5) Atkinson said he was acquainted with Greenlee, and (6) Atkinson told Ripp that Greenlee was staying at a specific Longview address. Greenlee argues that this evidence

---

[4] Greenlee does not take issue with the second continuance granted to accommodate the prosecuting attorney's trial schedule.

was critical to the State's case because it connected him to the getaway vehicle used in both thefts.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is not admissible except as provided by the evidence rules, other court rules, or by statute. ER 802. A statement is not hearsay if it is used only to show the effect on the listener, without regard to the truth of the statement. *State v. Edwards*, 131 Wn. App. 611, 614, 128 P.3d 631 (2006). When a statement is not offered for the truth of the matter asserted but to show why an officer conducted an investigation, it is not hearsay and is admissible. *State v. Iverson*, 126 Wn. App. 329, 337, 108 P.3d 799 (2005); *see also* 5D KARL B. TEGLAND, COURTROOM HANDBOOK ON WASHINGTON EVIDENCE: Rule 801 at 409 (2012-13) (observing that courts have admitted statements for the nonhearsay purpose of providing background or context). Whether a statement is hearsay is a question of law that we review de novo. *Edwards*, 131 Wn. App. at 614.

The State argued below that it was seeking the testimony at issue to show its effect on Officer Ripp, or, in other words, to explain the course of his investigation. The trial court allowed Ripp to testify, over defense counsel's hearsay objections, that dispatch had provided him with a description of the getaway car and a license plate number. Ripp explained that after receiving that information, he pursued the registered owner of the vehicle and discovered that it had been sold. He added that another officer found the vehicle and arrested the driver, Atkinson, on a separate charge. Ripp told Atkinson he was investigating a theft at Walmart. Contrary to Greenlee's assertion on appeal, the trial court did not allow Ripp to relate or describe Atkinson's response. Consequently, the jury heard no testimony about Atkinson's denial of involvement in

the Walmart thefts. But the court did allow Ripp to testify that he went to 1215 30th Avenue because Atkinson had said Greenlee was hanging out there.

We agree with the State that these statements were admitted not for their truth but to show why and how Officer Ripp came to contact Greenlee. *See Iverson*, 126 Wn. App. at 337 (victim's self-identification as protected party in protection order admissible not for truth of matter stated but to explain why officers conducted further investigation); *State v. Williams*, 85 Wn. App. 271, 280, 932 P.2d 665 (1997) (guard's statement to officer that he smelled alcohol on defendant's breath was admissible to show why officer then asked defendant to perform breathalyzer test and was not inadmissible hearsay); *but see Edwards*, 131 Wn. App. at 615 (in prosecution for possession of controlled substance with intent to deliver, detective's testimony that informant said defendant was dealing cocaine was improperly admitted to show impetus for investigation). With regard to the information from Atkinson, the record shows that Ripp went to the address Atkinson provided to see if Greenlee was there. Consequently, Atkinson's information was admitted not to prove where Greenlee was but to show why Ripp went to that address to look for him. The evidence showing that Greenlee was at the address Atkinson identified came from Ripp's nonhearsay testimony concerning Greenlee's arrest.

Greenlee argues further that even if these statements were initially admitted to show the course of the investigation and not the truth of the matters asserted, the State improperly treated this testimony as substantive evidence during closing argument. During his rebuttal, the prosecuting attorney argued as follows:

> You know, I don't -- it is not very surprising that Kevin Atkinson, a person who is arrested for doing whatever he is doing in the vehicle would give a false name. People who commit crimes give false names. Sure. Not surprising. We are not asking you to trust everything. Kevin -- We don't know [what] Kevin Atkinson said to Officer Ripp. That -- We didn't get into that. But we do know

that he was driving the same car that was reported at the scene and we saw that silver, looked like a Lincoln or something like that, pull up and head out. We do know he was driving the same car that had been reported from the WalMart. And, we do know that when Officer Ripp went and spoke with Kevin Atkinson, before he did, he said he did know the name Floyd Greenlee, and he got an address from him, and he -- a few days -- a day or two later went to that address, and the Defendant was there. So that does connect him to that car. And for all we know, really, we know there was definitely another person helping out in the car. For all we know, and it's not the issue here, Kevin Atkinson could have been the driver of the car that day.

2 RP at 255-56.

This rebuttal responded to the defense argument that Officer Ripp based his pursuit of Greenlee on information he received from Atkinson even though Atkinson gave him a false name, and to counsel's argument that there was no connection between Greenlee and the car. Defense counsel made the latter point as follows:

They said my client hopped in to this car. Where is the connection to the vehicle? Only one person was seen in this vehicle, and that was Kevin Atkinson. On the same day as the thefts. My client was never seen near this vehicle. It wasn't parked at the residence where he was arrested. It wasn't, you know, in his name. He wasn't the owner. He had nothing to do with it. You have heard no evidence that puts my client within miles of that vehicle.

2 RP at 253.

The State's rebuttal was a reasonable response to this argument and was based on evidence that the defense elicited without objection or limitation during Officer Ripp's cross-examination.

B.    EVIDENCE OF GUILT

Greenlee also asserts that the trial court erroneously allowed the State to elicit Officer Ripp's opinion that he was guilty of the crimes charged when it allowed him to testify that he arrested Greenlee, handcuffed him, took him to the police station, and booked him into jail.

Greenlee did not object to this testimony at trial. A party who fails to preserve an error may be entitled to review, however, if he raises a manifest error affecting a constitutional right. RAP 2.5(a)(3). Greenlee alleges that the trial court violated his constitutional right to a fair trial by admitting Officer Ripp's testimony about his arrest. *See State v. Mosteller*, 162 Wn. App. 418, 426, 254 P.3d 201 (right to fair trial is constitutional in nature), *review denied*, 172 Wn.2d 1025 (2011).

To demonstrate manifest error, Greenlee must show that the asserted error resulted in actual prejudice, or that it had practical and identifiable consequences at trial. *Mosteller*, 162 Wn. App. at 426. The trial court found Greenlee's postarrest statements admissible in a pretrial hearing, and Greenlee has not shown how evidence of the mere and obvious fact of his arrest on the charges before the jury prejudiced him.

## C.    BOOKING SHEET AND PHOTOGRAPH

Greenlee also argues that the trial court erred by admitting his booking sheet and photograph because this evidence was irrelevant. ER 401, 402.

The trial court overruled Greenlee's relevance objection when the State sought to admit Greenlee's booking sheet, and an enlargement of the photograph on that sheet, to show what he looked like near the time of the thefts. The trial court did not abuse its discretion by admitting this evidence. Greenlee's identity as the person shown in the security videotapes and photographs was the main issue at trial, and his appearance at the time of the thefts thus was highly relevant and not unduly prejudicial. *See State v. Rivers*, 129 Wn.2d 697, 712, 921 P.2d 495 (1996) ("mug shot" relevant where identity was at issue and was not prejudicial because jury knew defendant had been arrested for offense for which he was being tried and would have been aware that booking procedure existed); *State v. McCreven*, 170 Wn. App. 444, 485, 284 P.3d 793

10

(2012) (booking photograph is not necessarily prejudicial). The booking sheet from which the photograph was enlarged was necessary to show the date of the photograph taken in relation to the commission of the thefts charged. Although the booking sheet contained other information that could have been redacted, such as the bail amount, Greenlee never moved to redact any information and the trial court did not err in overruling the relevance objection he did make. The trial court's evidentiary rulings did not deprive Greenlee of a fair trial.

INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Greenlee contends that his trial attorney was ineffective in failing to move to suppress the evidence obtained following his arrest.

We review de novo a claim that counsel ineffectively represented the defendant. *State v. Thach*, 126 Wn. App. 297, 319, 106 P.3d 782, *review denied*, 155 Wn.2d 1005 (2005). To demonstrate ineffective assistance of counsel, a defendant must show that his attorney's performance was deficient and that the deficiency was prejudicial. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1998). An attorney's representation was deficient if it fell below an objective standard of reasonableness. *Saunders*, 91 Wn. App. at 578. Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Saunders*, 91 Wn. App. at 578. We give considerable deference to counsel's performance and presume it was effective. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Counsel is not ineffective for failing to make a motion unless there is a reasonable probability that the motion would have been granted. *McFarland*, 127 Wn.2d at 337 n.4. The failure to argue a groundless matter does not constitute a denial of effective counsel. *State v. Briggins*, 11 Wn. App. 687, 692, 524 P.2d 496, *review denied*, 84 Wn.2d 1012 (1974).

11

Greenlee argues that his trial attorney should have filed a motion to suppress because the police entered his home without his permission, walked up the stairs, looked into his bedroom, and entered and arrested him without a warrant. *See Payton v. New York*, 445 U.S. 573, 576, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) (Fourth Amendment prohibits police from entering person's home to make routine, warrantless arrest); *State v. Holeman*, 103 Wn.2d 426, 428-29, 693 P.2d 89 (1985) (under article I, section 7 of Washington Constitution, warrantless arrest of suspect standing in his doorway was unlawful).

Greenlee's argument is undermined, however, by the fact that the record does not show that he was arrested in his home. During the CrR 3.5 hearing, Officer Ripp's testimony established that the address where Atkinson said Greenlee was "hanging out" was a group home site and that the person in charge of the home gave the officer permission to enter and told him Greenlee was upstairs. Greenlee testified during the same hearing that Ripp arrested him at Freeman's house. During the trial, Ripp testified that when he went to the address Atkinson provided and asked the adult female who answered the door whether Freeman or Greenlee was there, she said Freeman was upstairs. When Ripp went upstairs, he found Greenlee and another individual.

A host who has dominion and control over the premises may consent to a search, whether it is for purposes of arrest or seizure of evidence. *State v. Rodriguez*, 65 Wn. App. 409, 414-15, 828 P.2d 636, *review denied*, 119 Wn.2d 1019 (1992). A person's consent to search premises is invalid, however, against anyone present with authority to control the premises equal to or greater than the consenting person. *State v. Libero*, 168 Wn. App. 612, 618, 277 P.3d 708 (2012). Here, the record shows that Greenlee was a guest in the home where he was arrested and that the person in charge of the home consented to the officers' entry. We see no probability that

12

No. 42033-3-II

a motion to suppress the evidence seized following Greenlee's arrest would have succeeded and his claim of ineffective assistance of counsel fails.

Greenlee's assignments of error lack merit and we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

VAN DEREN, J.

WORSWICK, C.J.