# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75662-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| TOMMIE BERNARD LEWIS, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: <u>November 6, 2017</u> |
| | ) | |

2017 NOV -6 AM 11:20

COURT OF APPEALS DIV I
STATE OF WASHINGTON

FILED

Cox, J. — Tommie Lewis appeals his judgment and sentence for two counts of domestic violence felony violation of a court order. Lewis contends that his Sixth Amendment right to confrontation was violated by the admission into evidence of two hearsay statements of identification. Because admission of these statements was harmless beyond a reasonable doubt, we affirm.

Lewis and Wendy Hynd were involved in a romantic relationship and have one child. In April 2014, Lewis was charged with assaulting Hynd. The trial court entered a no contact order, and Lewis was later convicted of witness tampering and two counts of domestic violence misdemeanor violation of a court order. During a bench trial on those charges, Lewis admitted that he had called Hynd from the King County jail on May 7, 2014.

On November 13, 2015, Hynd called 911 to report that Lewis had assaulted her in the couple's apartment while Hynd was holding their daughter. Lewis was booked in the King County jail, arraigned, and served with a no contact order protecting Hynd.

On January 27 and 28, 2016, while Lewis was in the King County jail, he made two calls to a phone number later identified as belonging to Hynd. Based upon these two recorded phone calls, Lewis was charged with two counts of domestic violence felony violation of a court order.[1]

Hynd did not testify at the ensuing bench trial. As part of its proof that Lewis was speaking to Hynd during the phone calls, the State sought to introduce testimony from Detective Daljit Gill. Detective Gill had investigated the 2014 incident, and telephoned Hynd to interview her as part of that investigation. Detective Gill testified that when she called the telephone number listed in the police report, she asked to speak with Wendy and "[s]he said it was her."[2] Detective Gill also testified regarding a second phone call that she received later the same day. She testified that she "recognized the voice to be the same person . . . I had spoken to earlier in the morning regarding this case, and the same person on the in-car video."[3] Detective Gill told the caller that she was on a police-recorded line and then asked, "[w]ho is this?"[4] The caller "identified herself as Wendy Hynd."[5]

---

[1] See RCW 26.50.110(5).
[2] Report of Proceedings (RP) (July 7, 2016) at 192.
[3] Id. at 195.
[4] Id.
[5] Id.

Lewis objected to admission of Hynd's statements based on hearsay and his Sixth Amendment confrontation rights. The trial court overruled the hearsay objection because the two statements were "statement[s] of identity."[6] The trial court also concluded that admission of Hynd's statements did not violate the Confrontation Clause because they were nontestimonial.

After considering all of the evidence, the trial court convicted Lewis of two counts of domestic violence felony violation of a court order. It sentenced Lewis accordingly.

Lewis appeals.

## HEARSAY

Lewis argues that the trial court abused its discretion in admitting Hynd's statements of self-identification because they were hearsay. We agree.

"Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'"[7] In general, hearsay is not admissible.[8] But if a statement is offered for a purpose other than its truth, the statement is not hearsay and it is admissible.[9] We review the trial court's hearsay ruling for abuse of discretion.[10]

Hynd's statements of self-identification were being introduced to prove her identity, the truth of her assertions. Thus, those statements were hearsay and

---

[6] Id. at 192, 379.
[7] State v. Iverson, 126 Wn. App. 329, 336, 108 P.3d 799 (2005) (quoting ER 801(c)).
[8] Id.
[9] Id. at 337.
[10] Id. at 336.

inadmissible absent some exception set forth in the Washington Rules of Evidence.[11] No exception applies to a hearsay statement of self-identification made by a witness, so the trial court erred in admitting these statements.[12] The State properly concedes this point in its briefing on appeal.

## CONFRONTATION CLAUSE

Lewis argues that the trial court violated his confrontation clause rights secured by the Sixth Amendment by admitting Hynd's statements of self-identification. Assuming without deciding that Lewis is correct, that error was harmless beyond a reasonable doubt.

The Sixth Amendment confrontation clause provides that in all criminal prosecutions "the accused shall enjoy the right . . . to be confronted with the witnesses against him."[13] "When a violation has occurred, we then review for harmless error."[14]

We review de novo confrontation clause challenges.[15]

The confrontation clause only applies to testimonial statements.[16] A testimonial statement is "typically a 'solemn declaration or affirmation made for

---

[11] See id.; ER 802.
[12] See generally, ER 803 and 804.
[13] U.S. CONST. amend. VI.
[14] State v. Jasper, 174 Wn.2d 96, 108, 271 P.3d 876 (2012) (citing Chapman v. California, 386 U.S. 18, 21-22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)).
[15] Id.
[16] Id.

the purpose of establishing or proving some fact.'"[17] The State has the burden of establishing that a statement is nontestimonial.[18]

The United States Supreme Court has stated that, at a minimum, testimonial statements include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and [] police interrogations."[19] In deciding whether statements are testimonial, the Washington supreme court adopted the "primary purpose" test.[20] Under this test:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.[21]

Testimonial statements include those that were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[22]

The State argues that Hynd's statements are nontestimonial because "they were basic, present-tense acknowledgements of [Hynd's] identity at the

---

[17] Id. at 109 (quoting Crawford v. Washington, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[18] State v. Koslowski, 166 Wn.2d 409, 417 n.3, 209 P.3d 479 (2009).

[19] Crawford, 541 U.S. at 68.

[20] Koslowski, 166 Wn.2d at 418.

[21] Id. (quoting Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)).

[22] State v. Lui, 179 Wn.2d 457, 506, 315 P.3d 493 (2014) (quoting Crawford, 541 U.S. at 52).

initiation of phone conversations."[23] It further argues that Hynd "was not formally bearing testimony by simply acknowledging who she was" and she was not chronicling past events or leveling an accusation.[24] Moreover, it contends that she would not have anticipated that her statements would be used in court two years later to establish her identity in a completely different case. The State provides no authority in support of its contentions, and we are unpersuaded by these arguments.[25]

Hynd's statements were made to a police officer during the investigation of a crime. In addition, they were not given to enable law enforcement to assist with an ongoing emergency.[26] Instead, Detective Gill's primary purpose in speaking with Hynd was "to establish or prove past events potentially relevant" to a later criminal prosecution for domestic violence.[27] These circumstances are such as would lead an objective witness to reasonably believe that the statements would be later used at trial.[28]

Assuming, without deciding, that Hynd's statements were testimonial and their admission violated Lewis's Sixth Amendment confrontation rights, we review their admission for constitutional harmless error.[29]

---

[23] Respondent's Supplemental Brief at 15.
[24] Id.
[25] See State v. Young, 89 Wn.2d 613, 625, 574 P.2d 1171, cert. denied, 439 U.S. 870, 99 S. Ct. 200, 58 L. Ed. 2d 182 (1978).
[26] Koslowski, 166 Wn.2d at 418 (quoting Davis, 547 U.S. at 822).
[27] Id.
[28] Lui, 179 Wn.2d at 506 (quoting Crawford, 541 U.S. at 52).
[29] Jasper, 174 Wn.2d at 108.

## HARMLESS ERROR

Lewis argues that admission of Hynd's hearsay statements was not harmless for purposes of the confrontation clause. We disagree.

A constitutional error is only harmless if the State shows "beyond a reasonable doubt that the error . . . did not contribute to the verdict."[30] The State bears the burden of proving beyond a reasonable doubt that the error was harmless.[31]

In applying the harmless error analysis when considering a confrontation clause violation, "[t]his court employs the 'overwhelming untainted evidence' test and looks to the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt."[32]

Here, admission of Hynd's statements was harmless in light of the overwhelming evidence in support of Lewis's conviction and, more specifically, in support of the finding that Lewis called Hynd, the person protected by the no contact order, from the King County jail.

Lewis challenges admission of Hynd's two statements of identification, but does not challenge the remainder of the trial court's findings and thus they are verities on appeal.[33]

---

[30] Id. at 117.
[31] Id.
[32] State v. Anderson, 171 Wn.2d 764, 770, 254 P.3d 815 (2011) (quoting State v. Guloy, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985)).
[33] State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

On January 27 and 28, 2016, two calls were placed from the unit where Lewis was held. Although the calls were placed using the account of another inmate, it is common for inmates to use each other's phone accounts to avoid detection and the male voice on the phone belonged to Lewis.

A Child Protective Services caseworker testified that he had spoken with Hynd twice at the phone number Lewis called on January 27 and 28, 2016, and CPS records listed that number as belonging to Hynd.

The jail phone call recorded May 7, 2014, was offered in evidence and played at trial. Lewis had previously admitted under oath that the voices on the May 7, 2014 call belonged to him and Hynd.

Detective Gill testified that the female voice in the January 27 and 28, 2016 calls was the same voice in the 911 call and the in-car video of the 2014 incident, the voice on the May 7, 2014 tape, and the voice of the person she had spoken with on the phone in April 2014. She noted that, in all the recordings she reviewed, Hynd had the same distinctive "gravelly" voice. She also noted that the person she spoke with on the phone in 2014 had knowledge of case-specific facts, knew what Detective Gill was investigating, and knew the people involved.

The audiotapes from the jail telephone conversations on May 7, 2014, and January 27 and 28, 2016, were played at trial. The trial court listened to all three recordings and could compare the voices for itself.

In addition, the content of the December 7, 2014 and January 27 and 28, 2016 calls supports a finding that Hynd was the recipient of all three calls. In all three calls, the man and woman discussed personal details of their lives

including discussions about Lewis' father, the couple's child, Lewis's violent behavior towards Hynd, and the ongoing legal proceedings against Lewis.

The properly admitted evidence overwhelming established that Lewis violated the no contract orders by phoning Hynd from jail.

Lewis further contends that the "trial court's findings confirm that the court relied on [the] constitutionally infirm evidence."[34] Lewis is wrong.

After hearing all the evidence, the trial court stated that it was persuaded by the testimony of a witness who had identified Lewis's voice, the circumstantial evidence, and "the court's own voice recognition that these same two people had the conversations."[35] The trial court noted that "[i]t would take a real stretch of the imagination to consider that . . . anything but the obvious [] happen[ed] here."[36]

In its written findings, the trial court did not rely upon Hynd's statements of identification. It found that Detective Gill recognized Wendy Hynd's voice from her telephone conversations with Hynd, the 911 call and the in-car video from the 2014 case, and the female voice on the May 7, 2014 jail phone call. After comparing the phone calls from May 7, 2014, and January 27 and 28, 2016, the trial court found that "the male and female on the January 27 and 28, 2016 phone calls were Tommie Lewis and Wendy Hynd."[37]

---

[34] Appellant's Opening Brief (Amended) at 16.
[35] RP (July 8, 2016) at 429.
[36] Id.
[37] Clerk's Papers at 62.

Because the untainted evidence is "so overwhelming that it necessarily leads to a finding of guilt," any error in the admission of Hynd's statements of self-identification was harmless beyond a reasonable doubt.[38]

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Leach, J._                          _Becker, J._

---

[38] Anderson, 171 Wn.2d at 770.