# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

RENE MACKPERSON RAMIREZ-LOPEZ,

Appellant.

No. 85133-1-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — Rene Ramirez-Lopez appeals his jury conviction, arguing the trial court erred in admitting jail phone calls under the business record statute. Ramirez-Lopez also asks us to remand for the trial court to strike the $500 crime victim penalty assessment and $115 domestic violence assessment fee from his judgment and sentence. We affirm Ramirez-Lopez's conviction, and remand to inquire on Ramirez-Lopez's ability to pay the domestic violence assessment fee and strike the victim penalty assessment.

I

On November 5, 2022, Snohomish County Sheriff's Deputies Jose Perez and Raymond Duran were dispatched to Sierra Vista Apartments in response to a 911 call. As Perez drove through the apartment complex, he was approached by a man who flagged Perez down and told him that his wife's nephew was having an argument with his girlfriend. The man led the deputies to his apartment unit and told them "they" were in the bathroom. Perez heard what he described as a verbal

altercation coming from the bathroom, and a male voice saying, "Be quiet. You can't get out. They will hear you." Perez announced himself as the police and asked the individuals inside the bathroom to open the door. After receiving no response, Perez kicked the door open. Perez saw a woman, later identified as Nayeli Jimenez-Martinez, standing there and look "to her right, as if giving me, like, some kind of sign to look behind the door. She was clearly terrified about something that was occurring in there." Perez observed a male standing behind the door, later identified as Ramirez-Lopez. Once Ramirez-Lopez exited the bathroom, Duran placed him in handcuffs. Ramirez-Lopez was arrested and later charged with unlawful imprisonment-domestic violence.

On November 10, 2022, the Snohomish County District Court issued a pretrial no-contact order against Ramirez-Lopez, ordering him to have no contact with Jimenez-Martinez. The order expired on November 23, 2022. The State presented 11 recorded telephone calls ostensibly indicating that between November 16 and 22, 2022, Ramirez-Lopez called Jimenez-Martinez from the Snohomish County Jail. The State charged Ramirez-Lopez with tampering with a witness-domestic violence and two counts of violating a domestic violence protection order.

The State filed a pretrial motion to admit Ramirez-Lopez's jail calls and call logs. Ramirez-Lopez argued there was no information allowing the conclusion that Jimenez-Martinez was the female speaker on the phone calls and the phone number that was called was different than the number Jimenez-Martinez provided to the State. The State argued that specific incidences were discussed on the

phone calls, which supported the conclusion that Jimenez-Martinez was the female speaker. The trial court admitted the phone calls provisionally, subject to future redactions. After receiving the defense's proposed redactions and the State's responses, the trial court entered rulings on individual objections throughout the calls based on relevance, inadmissible other acts, unfair prejudice, and cumulative evidence.

At trial, the State moved to admit exhibit 41, a compact disc of the 11 jail calls, into evidence. The State relied on the testimony of Susan Boone, a Snohomish County Jail public information and records specialist, who testified her duties included "fulfill[ing] requests for confidential inmate jail records, such as their booking photos, their arrest records, their phone calls, [and] their video visits. Whatever is required—requested." To obtain inmate information, Boone "can log into our vendor's software, put in the inmate's name, or their identity number, their jacket number, their pin number, and that will bring up the requested information." The jail phone calls are recorded and stored by the jail's vendor and recorded in real time. Boone testified the recordings are accurate in the information they reflect, the jail relies on the accuracy of the recordings, and though she had access to the recordings, she was unable to alter them in any way. The recordings are attributed to an inmate by their ID (identification) number, pin number, or jacket number. After being shown exhibit 23, a log of Ramirez-Lopez's calls, Boone testified the log consisted of several different names and pin numbers, and only one call was tied to his pin number. The remaining calls were attributed to Ramirez-Lopez because the same phone number was contacted, even though it

3

was associated with another inmate's pin number. Boone testified that it is possible for inmates to use another inmate's identification to communicate with individuals outside the jail. Inmates can "log into a system—into our phone system, or the station system, enter their ID number, use the voice verification password, and then hand the phone off or the tablet off to another inmate, who will continue the call."

Ramirez-Lopez argued the State did not lay the proper foundation for the admission of the calls because Boone testified she had no knowledge of how the records were maintained or kept. Ramirez-Lopez contended that "[j]ust because [Boone] has access to the report and can pull them doesn't mean that she has any other knowledge that is sufficient to establish these are a business record." The State argued that the fact the vendor was offsite, or that Boone was not aware of exactly how the recordings were stored does not negate that they were stored in the normal course of business at the Snohomish County Jail. The trial court stated,

> So, [in] regard to the foundation for these as business records, she did testify that these are records. These call logs and the call recordings are kept in the normal course of business. They are relied upon by the jail for conducting business. They are accurate, she has access to them, and she cannot alter them.
> I don't think that the State has to bring the actual vendor to testify as to how the records are ultimately stored in order for them to be admissible as a business record. I kind of liken that to the idea of a doctor's office having a chart note that's kept in a massive database, and the record's custodian is the only one that can access or get that information, and they bring it in. I don't think that we need to have the maker of the database come in to testify as to how the records are actually maintained or stored.

4

The trial court overruled Ramirez-Lopez's objection and found that foundation had been properly laid for admission as a business record under RCW 5.45.020.

On February 2, 2023, a jury convicted Ramirez-Lopez of tampering with a witness-domestic violence and two counts of violating a domestic violence no contact order. The jury deadlocked on the unlawful imprisonment charge, and the charge was dismissed. On March 13, 2023, Ramirez-Lopez was sentenced to 57 months for witness tampering and 364 days for violating the no-contact order. Additionally, the trial court stated, "I will also find the defendant is indigent, so I will only impose the $500 victim's penalty assessment, which is mandatory; the $115 domestic violence fee; and then the two $15 violation of a no-contact order fee. So, $30 total on that. So, if my math is correct, which is always questionable, that would be $645." Ramirez-Lopez appeals.

II

Ramirez-Lopez argues the trial court erred in admitting the recording because the State failed to lay a proper foundation. Ramirez-Lopez contends the State was required to comport to the requirements of the Uniform Business Records as Evidence Act, RCW 5.45.020. However, the cases Ramirez-Lopez cites analyze the introduction of evidence under the Act as whether the evidence may be admitted as an exception to the rule against hearsay evidence. State v. Iverson, 126 Wn. App. 329, 337, 108 P.3d 799 (2005); State v. Hines, 87 Wn. App. 98, 101, 941 P.2d 9 (1997). Ramirez-Lopez does not argue that the recording is hearsay and must meet a hearsay exception to be admissible. Professor Aronson writes that "[a] recognized method for authentication *computer-generated business*

5

*records* is similar to that for the business record exception to the hearsay rule, codified in RCW 5.45.020." ROBERT H. ARONSON ET AL., THE LAW OF EVIDENCE IN WASHINGTON § 3.03[1][f], at 3-11 to 3-12 (5th ed. 2023). However, Ramirez-Lopez does not cite authority holding that RCW 5.45.020 is the only method for authenticating an exhibit that may also be a business record.

Generally, authenticity is governed by ER 901. The rule requires that documents be authenticated or identified through proof sufficient to permit a reasonable trier of fact to find in favor of authenticity or identification. State v. Danielson, 37 Wn. App. 469, 471, 681 P.2d 260 (1984). A proponent can meet these requirements in more than one way. See e.g., ER 901(b). This standard does not require testimony from a party to a sound recording. "A sound recording, in particular, need not be authenticated by a witness with personal knowledge of the events recorded." State v. Williams, 136 Wn. App. 486, 500, 150 P.3d 111 (2007). "Rather, the trial court may consider any information sufficient to support the prima facie showing that the evidence is authentic." Id. at 500-01. Where "the tape records human voices, the foundational witness . . . usually must identify those voices." State v. Jackson, 113 Wn. App. 762, 767, 54 P.3d 739 (2002); ER 901(b)(1).

Here, the State presented evidence that the speakers were Ramirez-Lopez and Jimenez-Martinez. The first jail call within exhibit 41 was made using Ramirez-Lopez's own pin number and name, which established his voice on the remaining jail calls. Additionally, there was circumstantial evidence from the substance of the conversations that the female speaker was Jimenez-Martinez, including

discussion of facts of the current case, requesting the female speaker put money on the male's jail account which was consistent with Jimenez-Lopez depositing money into Ramirez-Lopez's account, discussion of the no-contact order, references to a prior assault that was consistent with an assault on Jimenez-Martinez, referring to the male speaker as "Mac," which Jimenez-Lopez was known to call Ramirez-Lopez, and professions of their feelings for one another. Additionally, the trial court heard Jimenez-Martinez testify in court and listened to the recording before it admitted the recording into evidence.

Boone testified that the recordings were made in real time, the recordings were accurate in the information they reflected, the jail relied on the accuracy of the recordings, and she was unable to alter them in any way. Boone confirmed she listened to the recording prior to coming to court and the recording was a fair and accurate copy of Ramirez-Lopez's phone calls as reflected in the call log. Boone testified that although only one out of the 11 phone calls was tied to Ramirez-Lopez's pin number, all the phone calls could be attributed to him because he contacted the same phone number. This foundational testimony, together with the identification of the voices, was sufficient to authenticate the recording.

The decision to admit evidence lies within the sound discretion of the trial court and should not be overturned absent a manifest abuse of discretion. State v. Neal, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). No abuse of discretion has been demonstrated.

7

III

Ramirez-Lopez asks us to remand for the trial court to strike the $500 crime victim penalty assessment from his judgment and sentence. He argues that a recent amendment to RCW 7.68.035 provides that the penalty assessment shall not be imposed against a defendant who is indigent at the time of sentencing and that the trial court made such a finding here. LAWS OF 2023, ch. 449, § 1(4). The State does not object to a remand for the purposes of striking the penalty assessment from Ramirez-Lopez's judgment and sentence. We accept the State's concession and remand accordingly.

Ramirez-Lopez also argues that on remand, the trial court should reconsider the imposition of the domestic violence assessment fee, claiming the trial court intended to impose only mandatory assessments. RCW 10.99.080 states that a court may impose a penalty assessment on any adult offender convicted of a crime involving domestic violence. In addition, RCW 10.99.080(5) encourages sentencing judges "to solicit input from the victim or representatives for the victim in assessing the ability of the convicted offender to pay the penalty, including information regarding current financial obligations, family circumstances, and ongoing restitution." Given the trial court's finding that Ramirez-Lopez is indigent, and because we remand to strike the victim penalty assessment, the trial court on remand should also indicate whether it intends to impose the domestic violence assessment in spite of Ramirez-Lopez's indigence or intends to impose only mandatory legal financial obligations.

8

We affirm Ramirez-Lopez's conviction and remand to strike the victim penalty assessment and clarify the court's intention concerning the domestic violence assessment.

_Birk, J._

WE CONCUR:

_Coburn, J._        _Bowman, J_