# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>v.<br><br>TIMOTHY JAMES CLINKSCALES,<br><br>          Appellant. | DIVISION ONE<br><br>No. 78275-4-I<br><br>UNPUBLISHED OPINION<br><br>FILED: September 23, 2019 |

DWYER, J. — Timothy Clinkscales appeals from the judgment entered on a jury's verdict finding him guilty of one count of felony violation of a court order with a special finding of domestic violence. Clinkscales challenges the admissibility and the sufficiency of the evidence used to support his conviction. For the reasons set out below, we remand for a new trial.

I

In August 2015, a no-contact order was issued barring Clinkscales from having any contact with, or coming within 300 feet of, Nicole Garris. This order was valid for five years.

On December 24, 2017, Lynnwood Police Officers Lindsay Carter and Charles Thayer responded to an apartment unit to investigate a potential no-contact order violation involving Clinkscales and Garris. Upon arrival, Officer Carter knocked on the front door while Officer Thayer stood nearby. A woman

answered the door. Officer Carter asked if she was Nicole. The woman said, "I'm Nicole."

As Officer Carter spoke to the woman at the front door, the officer saw a man wearing a patterned dark-colored winter "Northface" type jacket open a rear sliding door and flee the apartment. Officer Carter yelled to Officer Thayer: "He's running out the back." Officer Carter then pushed past the woman, who "was blocking the door with her arm," and ran through the apartment, and out the rear door. Meanwhile, Officer Thayer ran around the side of the apartment building, attempting to catch the fleeing "suspect."[1] Neither officer was able to catch the suspect.

Officer Thayer radioed a description of the suspect as a six-foot-tall, thin white male, wearing a black "Northface" type weather jacket. Officer Carter radioed other officers to set up a containment area.

Shortly thereafter, Officer Robert Beckstead contacted a man fitting the description of the suspect within two blocks of the apartment building. The man identified himself as Timothy Clinkscales. Upon joining Officer Beckstead, Officer Carter confirmed that Clinkscales was the same height and was wearing the "exact coat" as the man she saw fleeing the apartment. Clinkscales was arrested and charged with one count of felony violation of a domestic violence no-contact order.[2]

---

[1] Officer Thayer deemed the man a suspect because he was the only person in the area wearing a black jacket and running away from the apartment building.

[2] See RCW 26.50.110(5). At the time, Clinkscales had two prior convictions for violating provisions of a court order.

The woman who answered the door did not testify at the ensuing trial. Instead, the State proceeded against Clinkscales using a certified copy of the 2015 no-contact order and the testimony of several offices involved in arresting Clinkscales.[3]

Officer Carter testified that the woman who answered the apartment door identified herself as "Nicole." Clinkscales objected to admission of the woman's statement on hearsay and confrontation clause grounds. The trial court overruled the objection, explaining that the statement was admissible to show the steps the officers took in their investigation, not to prove that the woman was, in fact, Nicole Garris. Officer Carter explained how, prior to pursuing the man fleeing the apartment, the woman initially "attempted to shut the door in [the officer's] face." The officer also testified that the woman matched the approximate date of birth and gender of Garris as set forth in the 2015 no-contact order.

Officer Thayer testified that, initially, he stood by "while Officer Carter did her thing [and] talked with Ms. Garris at the door." Clinckscales objected to the woman's identity based on lack of foundation but the trial court overruled the objection.[4] Officer Thayer also testified to seeing the fleeing suspect within 275 feet of the apartment building during his pursuit, losing sight of the suspect, and returning to the apartment unit "to speak with Ms. Garris again." He also spoke to one of the two children present in the apartment. Officer Thayer testified about

---

[3] The no-contact order was admitted into evidence at trial as exhibit 2, but it is not part of the appellate record. See RAP 9.6 (designating clerk's papers and exhibits for appeal).

[4] Later, the trial court overruled Clinkscales's second foundation objection to the officers' testimony about contacting Garris.

the woman identifying herself to him and to being confident that he spoke to Garris at the apartment. The trial court overruled Clinkscales's speculation objection as to the officer's identification testimony.

Officer Jordan Correa testified to joining Officer Beckstead and speaking with Clinkscales prior to his arrest. Officer Correa informed the jury that, although Clinkscales claimed he had walked from Edmonds and was heading to his tent in Lynnwood, it had been snowing heavily that day and Clinkscales's "jacket and pants and shoes were dry." It appeared to the officer that Clinkscales had only recently stepped outside. Office Beckstead testified that, at the point of contact, Clinkscales was walking from the north to the south and was going "kind of the opposite direction" from where Clinkscales claimed his vehicle was parked in Edmonds. The State then rested its case.

Clinkscales moved to dismiss the charge against him claiming that the State had failed to prove the identity of the woman who answered the door or that she was the protected party in the 2015 no-contact order. The trial court denied the motion, explaining:

> I think there is sufficient information to send it back to the jury on the identity of the protected party. I believe the argument, frankly, goes to weight and believability whether the jury buys it or not. But I think the victim has been identified by two different police officers in this case. I'm going to deny your motion to dismiss on that basis.

Clinkscales testified to being homeless in December 2017 and living in a tent at a campsite in Lynnwood. According to Clinkscales, around 6:00 p.m. on December 24, he left Seattle and was headed to Lynnwood, but encountered car trouble along the way. He then dropped his car off at a friend's house in

Edmonds and continued on foot. After walking about 45 minutes and reaching 200th Street in Lynnwood, Clinkscales "noticed a police presence pretty much in the area that [he] knew [he] wasn't really supposed to be in." Officers contacted him at this point.

Clinkscales explained that, when he spoke to the officers on December 24, he denied "running from anyone" or being at the apartment where officers had responded. Clinkscales also testified to telling the officers that he had not talked to Garris for "about a year" and "was trying to avoid the area because it was Christmas Eve."

On cross-examination, Clinkscales admitted to knowing that a no-contact order barred him from contacting, or being near, Garris and to being aware of her last known residence:

> Q. And [Nicole Garris] lives on 200th; right?
> A. Yes.
> . . . .
> Q. You know where her apartment is?
> A. Yeah, in the past. We were together for quite a long time.

Clinkscales also explained that the existence of the no-contact order protecting Garris was the reason why he was not supposed to be in the area in which officers contacted him:

> Q. You said that you weren't sure she was living there on December 24th, 2017?
> A. No. I wasn't.
> Q. Yet, your first testimony was that you knew you weren't supposed to be there?
> A. I wasn't supposed to be in the area.
> Q. Because that's where she lived?
> A. Yeah. Initially, the last time I had contact with her, that's where it was, and that's where the order prohibits me from being. And so I didn't want to be in the area, because I seen [sic] the

police presence, and I didn't know what was going on, so I just wanted to steer clear of the whole area.

Q. Okay. That order does not list her address; does it?
A. No.
Q. It prohibits you from being near her residence?
A. Yes.
Q. And you knew on December 24th that her residence was on 200th?
A. I can't definitively say, for 100 percent, that that is exactly where she lives anymore.
Q. But that's what you told the officers, that you knew you weren't supposed to be there, because you tried to avoid her apartment?
A. Well, yeah, that's the recollection I have from where she resides.

After the close of testimony, Clinkscales requested an instruction limiting the jury's use of Officer Carter's testimony that the woman at the door identified herself as Nicole. He also requested that the instruction similarly limit the jury's consideration of Officer Thayer's testimony referring to her as "Ms. Garris." The trial court denied Clinkscales's request.

The jury convicted Clinkscales of felony violation of a domestic violence no-contact order and found that he committed the offense in the presence of two minor children. He appeals.

II

Clickscales's principal contention is that the trial court erred by admitting the woman's statement of self-identification because it was hearsay. We agree.

"Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" State v. Iverson, 126 Wn. App. 329, 336, 108 P.3d 799 (2005) (quoting ER 801(c)). While hearsay is generally not admissible, a statement

offered for a purpose other than its truth is not hearsay and is admissible.

Iverson, 126 Wn. App. at 336-37. We review a trial court's hearsay ruling for

abuse of discretion. State v. Magers, 164 Wn.2d 174, 187, 189 P.3d 126 (2008).

Abuse of discretion occurs when a trial court's decision is manifestly

unreasonable or based on untenable grounds. State v. Bradford, 175 Wn. App.

912, 927, 308 P.3d 736 (2013).

Here, the trial court initially ruled that the woman's "I'm Nicole" statement

was admitted for the limited purpose of showing the specifics of the officers'

investigation and not for the statement's truth. This was not error. See Iverson,

126 Wn. App. at 337 (the trial court did not err in admitting a witness's "self-

identification for the limited purpose of showing that she did so and to help

explain the officers' subsequent investigation"). But later, the trial court reversed

its initial ruling as to the limitation imposed on the jury's consideration and use of

the statement.[5]

While discussing Clinkscales's request for an instruction to limit the jury's

consideration of the officers' testimony about the woman identifying herself, the

following colloquy took place:

> [Ms. Gaffney, defense counsel]: So I can create an instruction
> instructing the jury that testimony provided about – I guess the
> exact language which would read that testimony stating that the
> person at the door was Nicole or Ms. Garris is to be considered for
> the purposes of investigation, not for the truth of the matter only,
> which my understanding is that's how that testimony was permitted
> to come in yesterday and today.

---

[5] The trial court was free to change its initial ruling "at any time before the entry of [its] final order or judgment." Osborne v. Osborne, 60 Wn.2d 163, 167, 372 P.2d 538 (1962); DGHI Enters. v. Pac. Cities, Inc., 137 Wn.2d 933, 944, 977 P.2d 1231 (1999) ("Until final judgment is entered, the trial judge is not bound by a prior expressed intention to rule in a certain manner.").

THE COURT: Ms. Cox?

[Ms. Cox, prosecuting attorney]: Well, that's not my recollection. My understanding, based on case law, is that someone can identify themselves. That is not hearsay.

THE COURT: That's not my understanding of why that came in. And so I would [sic] not be giving a limiting instruction on that issue.

Absent a "limiting instruction, evidence admitted as relevant for one purpose is deemed relevant for others." State v. Myers, 133 Wn.2d 26, 36, 941 P.2d 1102 (1997). Here, by refusing to limit the jury's consideration of the woman's statement, the trial court allowed the jury to consider the statement for its truth in order to identify Nicole and as substantive evidence proving her identity. Thus, the woman's statement was hearsay and the trial court erred in admitting it into evidence.[6]

Because the strongest and most persuasive evidence of the woman's identity was her self-identification statement, we conclude that the error in admitting the statement was not harmless and requires remand for a new trial.[7]

III

Clinkscales next contends that the State failed to adduce sufficient evidence to support his conviction. He maintains that, absent the inadmissible hearsay, there was no evidence proving the woman at the door was Nicole Garris or the location of her residence. We disagree.

---

[6] Our conclusion is in accord with a conclusion we reached in a factually similar case. See Iverson, 126 Wn. App. at 336 ("Had the court admitted the statements from the woman who answered the door, and who did not testify at trial, for the purposes of identifying her and proving the truth of the matter asserted, the statement would have been hearsay.").

[7] "A harmless error is an error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." State v. Britton, 27 Wn.2d 336, 341, 178 P.2d 341 (1947).

It is the State's burden to prove beyond a reasonable doubt every essential element of a charged crime. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Vasquez, 178 Wn.2d 1, 6, 309 P.3d 318 (2013). When resolving a challenge to the sufficiency of the evidence, we determine whether, after viewing it in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime proved beyond a reasonable doubt. State v. Garbaccio, 151 Wn. App. 716, 742, 214 P.3d 168 (2009) (citing State v. Hosier, 157 Wn.2d 1, 8, 133 P.3d 936 (2006)). A defendant who challenges the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn from the evidence. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Direct and circumstantial evidence can be equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Because credibility determinations are for the trier of fact and are not subject to review, State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990), we defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

Here, the trial court instructed the jury that, in order to find Clinkscales guilty of violation of a no-contact order, each of the following five elements must be proved beyond a reasonable doubt:

(1) That on or about December 24, 2017, there existed a no-contact order applicable to the defendant;
(2) That the defendant knew of the existence of this order;

(3) That on or about said date, the defendant knowingly violated a provision of this order;

(4) That the defendant has twice been previously convicted for violating the provisions of a court order issued pursuant to RCW 26.50; and

(5) That the defendant's act occurred in the State of Washington.

Jury Instruction 5.

On appeal, Clinkscales's sufficiency argument centers on the State's burden to prove that Garris was the woman who answered the door or resided at the apartment to which officers responded.[8] "Identity involves a question of fact for the jury and any relevant fact, either direct or circumstantial, which would convince or tend to convince a person of ordinary judgment, in carrying on his [or her] everyday affairs, of the identity of a person should be received and evaluated." State v. Hill, 83 Wn.2d 558, 560, 520 P.2d 618 (1974). The State contends that "[c]ircumstantial evidence of [the woman's] identity was abundant in context."

The jury had before it evidence indicating that Officers Carter and Thayer knew of the woman's identifying information and address from dispatch and from the no-contact order. The woman acted in a manner demonstrating a right to occupy the apartment unit by trying to shut the door on the officers. She also put her arm out in an attempt to block the officers from pursuing the suspect fleeing from the apartment. Officer Thayer informed the jury that the woman was not

---

[8] As part of its proof, the State entered the 2015 no-contact order into evidence as exhibit 2 at trial. The trial court also informed the jury that Clinkscales stipulated to being twice "convicted for violating the provisions of a court order" that "were issued pursuant to RCW 26.50." Jury Instruction 9.

happy about being contacted by police officers and refused to provide a written statement.

Additionally, the jury heard evidence that Clinkscales matched the description of, and was wearing the same jacket as, the suspect running from the apartment building. When officers contacted Clinkscales, he was walking in the opposite direction from the location in which he claimed his journey originated. Although it had been snowing heavily, officers explained that Clinkscales's clothing was dry and it looked as though he had only recently been outside.

Clinkscales admitted to being aware of the no-contact order preventing him from contacting Garris. He also admitted to knowing Garris lived in an apartment in Lynnwood because he had contacted her at that location in 2016. Clinkscales further admitted that he was not supposed to be in the area in which officers contacted him because it was close to Garris's residence. This is the reason why, Clinkscales explained, he generally avoided that area.

Viewed in the light most favorable to the State, we conclude that the jury had sufficient evidence before it to convict Clinkscales as charged without consideration of the inadmissible hearsay evidence. But we have no way of knowing whether the jury convicted Clinkscales solely on the basis of the woman's identification of herself as Nicole or on the other evidence establishing the woman's identity.

Therefore, we reverse the conviction and remand for a new trial.[9]

WE CONCUR:

---

---

[9] Because of our disposition we need not reach Clinkscales's remaining evidentiary and admissibility challenges.  The issues raised in his other claims of error may not reoccur on retrial.